NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5485
_____

DAVYED WOODARD,
  <u>Appellant</u>

v.

PHB DIE CASTING
_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 04-cv-00141-E)
District Judge: Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
November 2, 2007

Before: SLOVITER, BARRY and WEIS, <u>Circuit Judges</u>

(Filed : November 6, 2007)
_____

OPINION
_____

PER CURIAM

    Dayved Woodard appeals the District Court's grant of summary judgment in favor of his former employer, PHB Die Casting, on charges of employment discrimination in violation of federal and state law.

    Woodard worked at defendant PHB Die Casting's facility in Fairview,

Pennsylvania, from 1998 through 2003. He contends that during that time, he experienced and heard second-hand about a number of allegedly racist comments by co-workers and that he was given less favorable job assignments than non-African American employees. Specifically, he testified at his deposition: that he saw a burning cross and KKK sign drawn on a bathroom wall in 2002, and that management failed to have it removed for at least three months after he reported it (Woodard Tr. at 67-72); that his supervisor consistently gave him more physically demanding tasks at more complex machines (Woodard Tr. at 83-93); that he was told by co-workers about blatantly racist comments that had been made by other co-workers (Woodard Tr. at 33-41); and that more ambiguously racially charged comments were directed to him by co-workers (Woodard Tr. at 47-49). In addition, Woodard introduced evidence that a supervisor at PHB's Fairview facility agreed to attend diversity training in response to complaints in 2001 but never actually attended the class. See EEOC Determination of December 18, 2003. The District Court found this evidence insufficient to establish a prima facie case for either a hostile work environment or disparate treatment claim under Title VII, 42 U.S.C. § 2000e et seq., or the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 et seq. We agree.

     We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and undertake plenary review of the District Court's grant of summary judgment. See Cardenas v. Massey, 269 F.3d 251, 254 (3d Cir. 2001). Summary judgment is appropriate when there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as

a matter of law.  See id.; Fed. R. Civ. P. 56(c).  In making the determination, all reasonable inferences are drawn in favor of the non-moving party.  See Cardenas, 269 F.3d at 254.

In order to establish a prima facie hostile work environment claim under Title VII or the PHRA, a plaintiff must show that "(1) the employee suffered intentional discrimination because of [his race], (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same [race] in that position, and (5) the existence of respondeat superior liability."  Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001).  The discriminatory conduct must be so extreme as to amount to a change in the terms and conditions of employment.  See Carver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005).  Unless they are extremely severe, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim.  See id.

Like the District Court, we find no evidence to support Woodard's conclusion that any unfavorable work assignments resulted from racial animus.  Rather, Woodard testified at his deposition that any animosity on the part of the supervisor responsible for work assignments arose from a 1998 incident that had nothing to do with Woodard's race.  See Woodard Tr. at 98.

What remains are the racist graffiti and the racially insensitive comments made to

3

Woodard by his co-workers.[1] Over the course of three years, Woodard claims that he was twice asked questions using the phrase "you people," once asked what his race was, and once asked if he intended to complete a drug deal during a bathroom break. Even assuming these somewhat ambiguous incidents were related to Woodard's race, they are the type of offhand comments that are insufficient to support a hostile work environment claim. See Carver, 420 F.3d at 263. While the KKK-related graffiti and PHB's alleged failure to remove it promptly are more serious, this one incident, even in conjunction with the comments discussed above, is not enough for a trier of fact to conclude that discriminatory conduct in the workplace amounted to a change in the terms or conditions of Woodard's employment.

As the District Court noted, Woodard failed to make out a prima facie disparate treatment claim because he did not introduce evidence that he was subject to an adverse employment action. See Sarullo v. USPS, 352 F.3d 789, 797 (3d Cir. 2003).

Accordingly, we will affirm the judgment of the District Court.[2]

---

[1] The more serious racist comments that were made outside of Woodard's presence and directed at others do not serve as direct evidence in support of his hostile work environment claim, but they may be relevant to determining whether otherwise ambiguous comments or conduct was racially motivated. See Carver, 420 F.3d at 263-64.

[2] Appellant's motion to file a supplemental appendix and to supplement the District Court record is DENIED. See In re Cmty. Bank of N. Va., 418 F.3d 277, 317 n.32 (3d Cir. 2005) (noting that our review is confined to the record built by the District Court).